UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PAUL STRASTERS and ZADELLE STRASTERS,

    Plaintiffs,

v.

WEINSTEIN & RILEY, P.S.

    Defendant.

No. CV-10-3070-RHW

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Several motions are pending before the Court. Both the Plaintiffs and the Defendant moved for summary judgment (ECF Nos. 65 & 109), and the Plaintiffs also filed Motions for Sanctions (ECF No. 115) and to Extend Deadlines (ECF No. 124). The Court heard telephonic argument on November 14, 2011. Robert Reynolds appeared on behalf of Plaintiffs; Jason Anderson appeared on behalf of Defendant. The Court orally ruled on many of the issues presented during the hearing. This order memorializes those oral rulings and supplements them where necessary.

## FACTUAL BACKGROUND

In 2006, Plaintiffs filed for bankruptcy protection from their various creditors, including Wells Fargo Bank. Weinstein & Riley ("Defendant") initiated an adversary proceeding on behalf of Wells Fargo-the parties eventually settled the claim for

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 1

$3,000. Under this agreement, the Chapter 13 bankruptcy trustee would remit monthly payments to Wells Fargo until the bankruptcy proceedings converted to Chapter 7, and then the remainder would be paid directly by Plaintiffs to Defendant. The bankruptcy court issued a judgment of nondischargeability in accordance with these terms, and the trustee began making payments. (Def.'s Res. to Pls.' Mot. Summ. J. ["Def.'s Resp."] Exh. "1").

Soon another dispute arose between the parties. Plaintiffs moved the bankruptcy court to sanction Defendant for allegedly violating one of its orders. In return for Plaintiffs withdrawing the motion, Defendant agreed to reduce $1,000 from Plaintiffs' balance. (Answer, ¶3.6). Plaintiffs' statement did not immediately reflect this credit, however, and Plaintiffs' counsel sent Defendant a letter on November 19, 2009 alerting it to the error. (Pls. Memo. in Sup. Mot. Summ. J ["Pls.' Memo"] Exh. "C"). The letter did not discuss payments being made by the trustee or whether they were correctly reflected on the statement.

The trustee paid a total of $783.39 before the bankruptcy was eventually converted to a Chapter 7. (Pls. Reply in Sup. Mot. Summ. J., "Pls.' Reply", Exh. "A"). Combined with the $1,000 credit the parties agreed to, Plaintiffs' balance was now $1,216.61. (Answer, ¶3.9). The record does not indicate whether Plaintiffs ever received a statement reflecting this amount, but Mr. Strasters testified that, pursuant to the nondischargeability judgment, he and his wife made ten payments of $100 after the bankruptcy conversion. (Def.'s Memo. in Sup. Mot. Summ. J. ["Def.'s Memo"], Exh. "C," at 13). Defendant does not dispute that Plaintiffs made these payments. (Answer, ¶3.9). Mr. Strasters also testified that he asked in writing why his balance did not reflect the $1,000 settlement or the payments from the trustee. (Def.'s Memo., Exh. "C," at 13). He said he never received an answer. Plaintiffs stopped making payments when they ceased receiving statements from Defendant, though they still had a balance of at least $216.61. (Id.).

On July 30, 2010, and after these payments, Defendant sent Plaintiffs the

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** \* 2

demand letter that is the subject of this lawsuit. (Pls.' Memo, Exh. "E"). In it, Defendant declared Plaintiffs "in default" of the nondischargeabilty judgment and demanded an immediate payment of $2,000. The parties dispute how Defendant arrived at this figure. Defendant argues that Plaintiffs breached the nondischargability judgment, though it does not elaborate how, and says they are no longer entitled to the $1,000 credit-the $2,000 reflects the original $3,000 agreement minus the $1,000 Plaintiffs paid directly. Plaintiffs deny breaching the judgment. In either case, the demanded amount does not reflect the $783.39 paid by the trustee.

## PROCEDURAL HISTORY

Plaintiffs filed suit against both Defendant and Wells Fargo contending the demand letter violated the Fair Debt Collection Practices Act and Washington's Consumer Protection Act. Defendant represents itself in this action; Wells Fargo retained another law firm. Defendant moved to dismiss the case by arguing, as to the state law claim, that law firms are exempt from the statutory definition of a "collection agency." The Court denied the motion, finding that Defendants were collecting a third-party debt (Wells Fargo's) and thus acting in such a capacity.

Shortly after the Court's ruling, Plaintiffs and Wells Fargo entered into an agreement to settle the case for $6,500. (Def.'s Memo. in Sup. Mot. Summ. J., Exh. "A" ["Settlement Agreement"]). The plain language of the Settlement Agreement releases all claims against "Wells Fargo and . . . its attorneys." Defendant, believing it was acting as an attorney when it demanded payment on Wells Fargo's debt, moved for summary judgment arguing that the Settlement Agreement's express terms release it from liability. It argued alternatively Plaintiffs could not double recover for the same injury. The Court denied the motion on the FDCPA claim, but entered judgment for Defendant on the state claim. (ECF No. 61).

The parties have conducted additional discovery and now cross-move for summary judgment, though Plaintiffs' motion should be styled as one for partial summary judgment since it addresses only prima facie liability and not Defendant's

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 3

affirmative defense. Plaintiffs have also filed a motion for an order of contempt for Defendant's alleged failure to follow a discovery order, and they ask for an extension of the discovery deadline until they receive this discovery.

## **STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the affidavits, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for the trier of fact to reasonably return a verdict for the non-moving party. Id. at 248.

When there are simultaneous cross-motions for summary judgment, the Court will consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). A party with the burden of proof on an issue at trial-including for an affirmative defense-must demonstrate that no reasonable trier of fact could find other than for them. Soremekun v. Thrifty Payless, Inc, 509 F.3d 978, 984 (9th Cir. 2007). Once it is established that a genuine factual issue exists, the opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 4

# ANALYSIS

## A. MOTIONS FOR SUMMARY JUDGMENT

Since the arguments presented in these motions are interrelated, the following analysis is organized by issue rather than by motion. But the Court has considered each motion separately with the appropriate standard of review. Riverside Two, 249 F.3d at 1136.

### 1. Did the Parties Settle the Case

Defendant contends that a settlement agreement signed by Plaintiffs and Wells Fargo, a former defendant in this case, disposes of this lawsuit. In a boilerplate clause, the Agreement releases "Wells Fargo and its respective corporate parents, subsidiaries and affiliates, . . . and attorneys" from all claims relating to this action. (Settlement Agreement, at 1). It is signed by both Plaintiffs and a Wells Fargo representative; it is not signed by Defendant, nor is Defendant named anywhere in the document. (Id.) The Defendant tried this argument once before; it was the subject of its first summary judgment motion, which the Court denied because the plain language of the agreement had more than one reasonable interpretation. Renfro v. Kaur, 156 Wn. App. 655, 661 (2010) (Under Washington law, summary judgment is improper in contract interpretation where the text of the contract, coupled with the parties' objective manifestations, results in two reasonable but competing meanings.). It was reasonable to conclude that the "attorneys" released were those representing Wells Fargo in this lawsuit, not Defendant. (ECF No. 61, at 4-5).

Defendant now submits deposition testimony from Plaintiffs and a representative of Wells Fargo to show that the parties intended to release Defendant. Sharon Bascom, a Wells Fargo employee with knowledge of the settlement, testified that the agreement was intended "to make sure that all [the] issues were resolved *between Wells Fargo and the Strasters*." (Def.'s Memo., Exh. "B", at 15) (emphasis added). She said that the release "include[s] only Wells Fargo," but acknowledged that the boilerplate language makes a reference to "attorneys" and agreed that the

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 5

Settlement Agreement released all the parties that were identified in the paragraph. (Id. at 17-19).

Defendant also deposed both Plaintiffs about the Settlement Agreement, but their intent is not clear. Mr. Strasters acknowledged that he wanted the lawsuit "to be over" and said that he has "no desire to deal with [Defendant]" anymore. (Def.'s Memo., Exh. "C," at 17). While this might suggest that he intended to release Defendant, he also testified that by signing the document he "was eliminating Wells Fargo" from the lawsuit after expressing surprise that Wells Fargo was even a party. (Id. at 16-17). Ms. Strasters testified that she signed the Settlement Agreement only because Mr. Strasters recommended she do so, and that she understood the agreement to mean that "we're done with Wells Fargo." (Id., Exh. "D," at 10). Defendant's counsel never directly asked either Plaintiff whether they intended to release Defendant as one of Wells Fargo's "attorneys."

In the context of Defendant's motion, where Plaintiffs are entitled to inferences from the evidence, this testimony does not support judgment in its favor. Although Ms. Bascom read the Settlement Agreement on the record and agreed that it releases Wells Fargo's "attorneys," she did not testify that attorneys meant Defendant. In fact, she stated that two other attorneys represented Wells Fargo with regard to this case. (Def.'s Memo., Exh. "B," at 5-6). She repeatedly said that the agreement settled claims "between Wells Fargo and the Strasters" and that it included "only Wells Fargo." Moreover, both Plaintiffs, to the extent they appear to understand the Settlement Agreement at all, testified that it releases Wells Fargo without mentioning Defendant. Taken in the light most favorable to them, this evidence creates a factual dispute and requires denying Defendant's motion on this issue.

**2.     Can Plaintiffs Establish a Prima Facie Violation of the FDCPA**

Next, the Court must determine whether Defendant committed a prima facie violation of the FDCPA when it sent the July 30, 2010, demand letter. Congress enacted the FDCPA to eliminate abusive debt collection practices and to curb the

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** \* 6

recurring problem of collection attempts for debts that the consumer already paid. Jerman v. Carlisle, McNellie, Rini, Kramar & Ulrich, --- U.S. ---, 130 S. Ct. 1605, 1608 (2010) (explaining FDCPA purpose). To wit, the FDCPA prohibits debt collectors from engaging in false, deceptive, and misleading practices, which include misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The FDCPA imposes strict liability for violations, so a factual dispute about a debt collector's intent is relevant only to damages, not to ultimate liability. Clark v. Capital Credit & Collec. Serv., Inc., 460 F.3d 1162, 1175-76 (9th Cir. 2006).

The parties agree that Defendant sent Plaintiffs a demand for $2,000. (Answer, ¶3.10). Although Defendant argues that Plaintiffs are not entitled to a $1,000 credit for withdrawing their motion for sanctions in the bankruptcy court, the $2,000 demand does not reflect the $783.39 paid directly to Wells Fargo by the trustee. Regardless of whether the actual balance is $1,216.61 or $216.61, the demand letter misrepresents "the character, amount, or legal status" of the debt, thus violating the FDCPA. 15 U.S.C. § 1692e(2)(A); *see also* Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (demand for $10 more than owed established prima facie violation). A single violation is enough to create a prima facie case. *See* Smith v. Nat'l Credit Systems, Inc., 2011 WL 3915517, *3 (D. Ariz. July 18, 2011) (citing cases).

The Court grants Plaintiffs' motion for partial summary judgment. Defendant committed a prima facie violation of the FDCPA, though ultimate liability is subject to application of the bona fide error defense.

**3.    Does the "Bona Fide Error Defense" Apply**

Debt collectors can escape liability for FDCPA violations under a narrow statutory exception termed the "bona error defense." This is an affirmative defense that applies only if the debt collector:

> shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Defendant properly raised the defense in its answer and must

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 7

prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. McCullough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011). The first prong is subjective, while the remaining two are objective, and the Defendant has the burden of proof on all three. Johnson v. Riddle, 443 F.3d 723, 728-29 (10th Cir. 2006). Although it is possible to succeed on summary judgment, application of the bona fide error defense is "'a fact-intensive question,'" implying that it is usually a question for the trier of fact. Id. (*quoting* Wilhelm v. Credico Inc., 519 F.3d 416, 421 (8th Cir. 2008)). Here, there are material issues of fact that preclude summary judgment for Defendant.

First, the error must be bona fide; "it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." Kort v. Diversified Collection Serv., Inc., 394 F.3d 530, 538 (7th Cir. 2005). That is, it must be an objectively reasonable error. Here, the trustee made payments to Wells Fargo despite the nondischargability judgment expressly designating Defendant as the recipient. (ECF No. 97-1, at 7). Plaintiffs counter that Defendant had notice of the error both when their attorney sent Defendant a letter informing it that Plaintiffs' balance did not reflect "the credit that we agreed to," (Pls.' Memo., Exh. "C"), and when Mr. Strasters asked why his statements did not reflect the trustee payments. Because a bona fide error must be made in good faith, an error made with knowledge precludes the defense. *See* In re Eastman, 419 B.R. 711, 730 (W.D. Tex. 2009). Mr. Strasters's deposition testimony creates a disputed issue of fact. If his testimony is true, as the Court must presume on Defendant's motion, then Defendant had notice of the missing trustee payments prior to its 2010 demand letter, and it would not be entitled to the bona fide error defense.

Moreover, the third prong of the defense requires that debt collectors maintain procedures reasonably adapted to avoid errors. The Ninth Circuit uses a two-step analysis to determine whether procedures are reasonably adapted. Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1006 (9th Cir. 2008). First, the debt collector must

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** \* 8

actually employ the procedures to avoid errors. Second, the procedures must be "'reasonably adapted' to 'avoid the *specific error at issue*.'" Id. (emphasis added). Affidavits at summary judgment can prove that a procedure is reasonably adapted if they include "more than a mere assertion to that effect." Id. They must not only explain the procedures, but also show how they were adapted to avoid the particular error in question.

Defendant submits an affidavit from William Weinstein, a principal at the firm. (Def.'s Memo., Exh. "E"). Mr. Weinstein explains that Defendant routinely checks whether debtors have made payments directly to creditors by monitoring the "direct pay file." (Id. at 2). The direct pay file is an electronic document maintained by Wells Fargo and uploaded into Defendant's accounting software. Mr. Weinstein does not indicate when or how often Defendant receives an updated direct pay file. He states the direct pay file on Plaintiffs' account never reflected payments made by the trustee, nor did Defendant receive any other notification from Wells Fargo that those payments were submitted. (Id. at 3). Ms. Bascom confirmed that she never informed Defendant that the trustee paid any money. (Def.'s Memo., Exh. "B", at 9). In essence, Defendant shifts the blame to Wells Fargo and argues that they dropped the ball.

But "[u]nwarranted reliance on a client is not procedure to avoid error," McCullough, 637 F.3d at 948, and the trier of fact could conclude that Defendant's reliance on Wells Fargo's direct pay file was not reasonable. For example, Ms. Bascom also testified that Defendant usually calls Wells Fargo to ask whether any direct payments have been made, suggesting that the direct pay file may not always be current. (Def.'s Memo., Exh. "B", at 20). It is not clear from her deposition whether this occurred, and a reasonable trier of fact might find that Defendant did not actually "maintain,"–utilize–this procedure here. *See* Johnson, 443 F.3d at 731 (denying summary judgment on bona fide error defense). Moreover, the original nondischargeability judgment, which describes the payment schedule and is signed by an attorney for Defendant, expressly provides that the trustee will make the initial

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 9

payments on the account. (ECF No. 97-1, at 6). Defendant describes no procedure, other than an absolute reliance on Wells Fargo, for monitoring a debtor's compliance with bankruptcy judgments.

Viewed in Plaintiffs' favor, a material factual dispute exists about the reasonableness of Defendant's reliance on the direct pay file. *Cf.* Reichert, 531 F.3d at 1007 ("A debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake.").

### 4. What Damages Are Available

In their Complaint, Plaintiffs seek "actual damages" of $1,783.69, the difference between the erroneous $2,000 demand and the $216.31 actually owed. Plaintiffs also ask for statutory damages, damages for emotional distress, and attorney's fees. Defendant challenges two of these figures. First, it argues that Plaintiffs never paid the $1,783.69 overage and did not suffer any actual damages. Second, it contends Plaintiffs agreed to dismiss their emotional damages claim in exchange for the Court allowing their deposition by telephone.

Debt collectors who violate the FDCPA are liable for (1) actual damages, (2) statutory damages of up to $1,000, and (3) reasonable attorney's fees. 15 U.S.C. § 1692k(a). Although the statute does not define "actual damages," courts analogize to compensatory damages and find the term includes out of pocket expenses and emotional harm. *See* Fausto v. Credigy Servs. Corp., 598 F. Supp.2d 1049, 1054 (N.D. Cal. 2009); Nelson v. Equifax Info. Servs., LLC, 522 F. Supp.2d 1222, 1239 (C.D. Cal. 2007). Here, Plaintiffs do not allege that they paid $2,000 in response to Defendant's demand letter. They have suffered no out of pocket expense and are not entitled to the $1,783.69 sum.

The actual damages measure also includes emotional distress, however, and that claim will proceed to trial. First, Defendant's procedural argument that Plaintiffs are barred from recovering emotional damages is unavailing. Plaintiffs sought a protective order to avoid having their depositions taken, and they indicated that they would

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 10

dismiss their claim for emotional distress if granted. But motion practice is not an arrangement where parties barter with the Court to grant the relief they request. Defendant ultimately deposed Plaintiffs, and they never stipulated to the dismissal of their claim. At most, their statement appears to be a continuation of the settlement negotiations in which Plaintiffs offered to dismiss the case in exchange for payment of their attorney's fees. (*See* Def.'s Memo., Exh. "C," at 10).

Moreover, there is enough evidence of emotional distress to survive summary judgment. In the Ninth Circuit, emotional distress damages may be proved a number of ways, including through corroborating medical evidence or non-expert testimony establishing "manifestations of mental anguish [and the occurrence of] significant emotional harm." Dawson v. Wash. Mut. Bank, 390 F.3d 1139, 1149-50 (9th Cir. 2004). Mr. Strasters testified during his deposition, at one point in tears, that he was "very upset" by the erroneous demand letter. (Def. Memo., Exh. "C," at 10). He said the letter made him lose sleep and avoid social functions. (Id. at 22). Ms. Strasters described a change in her husband's personality. (Def.'s Memo., Exh. "D," at 13). Combined, these accounts create a triable issue of fact as to whether Plaintiffs suffered recoverable emotional distress. *See* Acton v. Bank One Corp., 293 F. Supp.2d 1092, 1100-01 (D. Ariz. 2003) (despite no "overwhelming evidence of emotional distress damages," claim survived summary judgment where plaintiff testified incident left him "stressed" and deprived him of sleep).

**B.      PLAINTIFFS' MOTIONS FOR SANCTIONS & EXTENSION**

Plaintiffs have moved for sanctions against Defendant for an alleged violation of a Court order compelling discovery. They ask for production of the documents and an award of damages. Defendant argues that Plaintiffs' motion is barred because they failed to confer prior to filing their motion and that, in any event, the discovery has been provided. Defendant counters for an award of attorney's fees for defending the motion.

For the reasons discussed at the hearing, the Court grants and denies the Motion

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** \* 11

1  for Sanctions and grants the Motion to Extend. The Court ordered that the contract
2  between Wells Fargo and Defendant be produced that day, and extended the deadline
3  for Plaintiffs to submit witness and exhibit lists by five days. The Court denied an
4  award of "minor punitive damages" to the Plaintiffs.
5       Accordingly, **IT IS HEREBY ORDERED:**
6       1. Plaintiffs' Motion for Summary Judgment (ECF No. 65) is **GRANTED and**
7  **DENIED**, in part. The Court declares that Defendant committed a prima facie
8  violation of the FDCPA, and that fact is treated as having been established. FRCP
9  56(g). The Court does not grant Plaintiffs judgment on liability.
10      2. Defendant's Motion for Summary Judgment (ECF No. 109) is **GRANTED**
11 **and DENIED**, in part. The Court grants Defendant's motion as to actual damages, and
12 all other requested relief is denied.
13      3. Plaintiffs' Motion for Sanctions (ECF No. 115) is **GRANTED and**
14 **DENIED**, in part.
15      4. Plaintiffs' Motion to Extend Deadline (ECF No. 124) is **GRANTED**.
16      5. Plaintiffs' Motion to Expedite (ECF No. 117) is **DENIED**, as moot.
17      **IT IS SO ORDERED.** The District Court Executive is directed to enter this
18 Order and forward copies to counsel.
19      **DATED** this 5th day of December, 2011.

           *s/Robert H. Whaley*
           ROBERT H. WHALEY
           United States District Judge

Q:\aCIVIL\2010\Strasters\sj2.ord.wpd

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** * 12