1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9

10
11

PAUL STRASTERS and ZADELLE
STRASTERS,

12

Plaintiffs,

No.  CV-10-3070-RHW

13

v.

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

14

WEINSTEIN & RILEY, P.S.

15

Defendant.

16    The Court held a bench trial in this case on January 30, 2012. The Plaintiffs

17 were present and represented by Seth Reynolds. Jason Anderson appeared on behalf

18 of the Defendant. The Court finds and rules as follows. FED. R. CIV. P. 52(a)(1).

19                                              **FACTS**

20    In 2006, the Plaintiffs filed for bankruptcy protection from their various

21 creditors, including Wells Fargo Bank (Exh. 1). Weinstein & Riley ("Defendant")

22 initiated an adversary proceeding on behalf of Wells Fargo—the parties eventually

23 settled the claim for $3,000 (Exh. 2). Under this agreement, the Chapter 13 bankruptcy

24 trustee would remit monthly payments to Wells Fargo until the bankruptcy

25 proceedings converted to Chapter 7, and then the remainder would be paid directly by

26 the Plaintiffs to the Defendant. The bankruptcy court issued an Order of

27 Nondischargeability outlining these terms (Exh. A), and the trustee began making

28 payments.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 1

1    Despite this settlement and the trustee's payments flowing to Wells Fargo, the

2 Defendant continued to contact the Plaintiffs regarding the debt. The Plaintiffs

3 considered this a violation of the bankruptcy court's automatic stay and moved for

4 sanctions (Exh. D). In return for the Plaintiffs withdrawing their motion, Lisa Shank,

5 an agent for the Defendant, agreed to reduce $1,000 from Plaintiffs' balance. These

6 two terms comprise the whole agreement. The Defendant never disputed that this oral

7 agreement exists, and the Court discredits the testimony of William Weinstein that

8 further conditions remain unfilled. By ceasing pursuit of their motion, the Plaintiffs

9 substantially complied with the settlement agreement and are entitled to a $1,000

10 credit.

11    The trustee paid a total of $783.39 before the bankruptcy eventually converted

12 into a Chapter 7 (Exh. B). The Plaintiffs then began making the $100 monthly

13 payments to the Defendant as contemplated by the Order of Nondischargeability.

14 They became confused, however, when their monthly statements failed to account for

15 either the money paid by the trustee or the $1,000 settlement. The Plaintiffs wrote

16 notations on the payment slips returned to the Defendant with each payment asking

17 about these inconsistencies. This effort was fruitless. When the Defendant continued

18 sending statements for the wrong amount, the Plaintiffs asked their lawyer, Robert

19 Reynolds, to send the Defendant a letter about the errors. Mr. Reynolds had filed the

20 Plaintiffs bankruptcy petition in 2006 and represented them throughout those

21 proceedings, including the motion for sanctions. The Defendant's records show it

22 received a letter in 2007 about payments to the trustee; the entry correctly surmised

23 that the Defendant would "never see this" money (Exh. F, at 4). Mr. Reynolds sent

24 another letter on November 19, 2008 (Exh. E), a document the Court finds genuine

25 despite Mr. Weinstein's contrary assertions. But Mr. Reynold's labors fared no better

26 than those of his clients, and the Defendant yet again failed to update the Plaintiffs'

27 billing statements.

28    Over the next ten months the Plaintiffs paid $1,000 directly to the Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 2

1  After subtracting this sum, the money paid by the trustee, and the settlement credit
2  from the initial balance, the Plaintiffs owed $216.61. The Defendant eventually
3  stopped sending the Plaintiffs monthly statements, and they never paid off this
4  balance. Then, on July 30, 2010, the Defendant sent the Plaintiffs a demand letter for
5  $2,000 (Exh. G). The letter does not detail how the Defendant arrived at this figure,
6  but the Court finds the sum reflects only the Plaintiffs' direct payments, omitting the
7  trustee's contributions and the $1,000 settlement negotiated by Lisa Shank. Finally
8  exasperated, the Plaintiffs used the letter as the basis for this lawsuit.

9      These facts are assembled from the admitted exhibits and the testimony of both
10 Plaintiffs, which the Court finds credible on all issues. The Court discredits the
11 testimony of the defense's single witness, Mr. Weinstein, who was evasive and
12 argumentative. Exemplifying his demeanor throughout the majority of his testimony,
13 Mr. Weinstein indignantly refused to acknowledge that the letter to the Plaintiffs,
14 which "demand[ed]" payment in "an attempt to collect a debt," was a debt-collection
15 letter. In this exchange and others, Mr. Weinstein exhibited a clear bias against the
16 "explosion" of FDCPA cases and the consumers who file them, and his testimony was
17 inconsistent. He alleged more than once that the Plaintiffs falsified evidence, despite
18 the parties stipulating before trial to the authenticity of every exhibit offered. Weighed
19 against this hollow testimony, the Plaintiffs' factual proof exceeds the preponderance
20 of the evidence burden with which they are saddled.

21     To meet its own burden on its affirmative defense, the Defendant relies almost
22 exclusively on Mr. Weinstein. This creates an obvious problem. The documentary
23 exhibits admitted to show the procedures the Defendant employs to avoid FDCPA
24 violations speak for themselves, but Mr. Weinstein's testimony explaining those
25 exhibits or procedures, the frequency of their use, and their overall effectiveness is not
26 credible.

27
28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 3

## CONCLUSIONS

**A. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

At the close of the Plaintiffs' case-in-chief, the Defendant moved for judgment in its favor by arguing that the Plaintiffs failed to prove that it is a "debt collector" or that they are "consumers" under the FDCPA. 15 U.S.C. §§ 1692a(3) & (6); FED. R. CIV. P. 50. The Court denies this motion for two independent reasons.

First, the Plaintiffs moved for summary judgment on liability. Their brief alleged that the Defendant was a debt collector and attached the Defendant's interrogatory responses, which admitted that it possessed a contingent interest in recovery of Wells Fargo's debt and that it has sued other debtors in the past. (ECF No. 66, at 3). These facts, if true, would render the Defendant a "debt collector" under the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 297 (1995) (holding that lawyers who attempt to collect third-party debts through litigation are "debt collectors"). Also attached was the Defendant's letter demanding that Paul Strasters pay the Wells Fargo debt. This evidence shows that Mr. Strasters is a "consumer," and, frankly, any argument to the contrary is frivolous. 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt"). Upon these showings, the burden became the Defendant's to show that material factual issues precluded judgment.[1] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Defendant's detailed response addressed every issue the Plaintiffs raised except these,[2]

---

[1]

After trial, the Defendant filed a supplemental brief arguing that the facts and argument offered in the Plaintiffs' summary judgment papers is insufficient to shift the burden. The Court finds this unpersuasive. The discovery responses set forth specific facts relevant to the Defendant's status under the FDCPA. Regardless of the weight the Defendant attributes to them, it was required to respond with controverting evidence establishing a factual dispute for trial. FED R. CIV. P. 56(c).

[2]

Specifically, the Defendant responded to the Plaintiffs' arguments about the settlement agreement, the trustee's payments, the $1,000 credit, and its bona fide error defense.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 4

1  and counsel failed to broach them at oral argument. Therefore the Court's order

2  granting the Plaintiffs partial summary judgment subsumes these elements, and the

3  Plaintiffs were not required to present such evidence at trial. Even so, the Plaintiffs

4  presented sufficient evidence at trial to establish they were consumers under the

5  FDCPA.

6       Second, the parties filed a joint pre-trial order, prepared by the Defendant, in

7  which they identified six controverted legal and factual issues for the Court to resolve.

8  (ECF No. 136). Pre-trial orders serve to focus the trial and prevent unfair surprise,

9  United States v. First Nat'l Bank, 652 F.2d 882, 886 (9th Cir. 1981), the latter

10  occurring, for example, when a party ambushes an opponent with a novel argument

11  on the day of trial. Excluded from the pre-trial order's list of issues is any mention that

12  the Defendant challenged its or the Plaintiffs' classifications under the FDCPA. The

13  issue statements, as crafted by the parties, actually imply that the Plaintiffs have

14  already satisfied these threshold showings. Moreover, after the Plaintiffs explicitly

15  contended that the Defendant is a debt collector and they are consumers, the

16  Defendant failed to address these issues in its own recitals. The Court deems waived

17  any matters omitted from the pre-trial order and uses this as a second basis to deny the

18  Defendant's motion. Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir. 1985)

19  (holding that district courts retain broad discretion to determine the preclusive effect

20  of a final pre-trial order on the determination of issues of law and fact at trial).

21  **B. ISSUES PRESENTED AT TRIAL**

22       **1. The Settlement Agreement**

23       The Defendant contends that a settlement agreement signed by Plaintiffs and

24  Wells Fargo, a former defendant in this case, disposes of this lawsuit (Exh. 7). In a

25  boilerplate clause, the agreement releases "Wells Fargo and its respective corporate

26  parents, subsidiaries and affiliates, . . . and attorneys" from all claims relating to this

27  action. It is signed by both Plaintiffs and a Wells Fargo representative; it is not signed

28

(ECF No. 97, at 5-8).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 5

1  by Defendant, nor is Defendant named anywhere in the document. The Court denied

2  both of the Defendant's summary judgment motions on this issue, finding it

3  reasonable to conclude that the "attorneys" released were those representing Wells

4  Fargo in this lawsuit, not Defendant. It reserved a factual question for trial.

5      In Washington,[3] extrinsic evidence about the parties' intent is admissible to

6  interpret ambiguous contracts. Berg v. Hudesman, 115 Wn.2d 657, 662 (1990).

7  Relevant evidence includes that about: (1) the subject matter and objective of the

8  contract; (2) all the circumstances surrounding the making of the contract; (3) the

9  subsequent acts and conduct of the parties; and (4) the reasonableness of respective

10 interpretations urged by the parties. Hearst Comm'n, Inc. v. Seattle Times Co., 154

11 Wn.2d 493, 502 (2005). But outside evidence is limited to determining the meaning

12 of specific words and terms. Id. at 503. Here, the parties contest the definition of

13 "attorneys."

14     The Court finds that the Defendant is not covered by the settlement agreement's

15 release. Paul Strasters testified that he intended to release only Wells Fargo and not

16 the Defendant. Several facts corroborate this testimony. First, the agreement does not

17 name the Defendant as a party to it, despite specifically identifying this lawsuit, and

18 although it does not define the term, it indicates that a different attorney represents

19 Wells Fargo. Second, the Defendant was not included in the stipulation for dismissal

20 of Wells Fargo, which it approved without objection. If the parties intended to release

21 Defendant, this omission would be a violation of the settlement agreement requiring

22 that "the Strasters shall dismiss, with prejudice, the Lawsuit." The Defendant never

23 alleged such a breach because there was none. The agreement provides for the

24 dismissal only of the claims "against Wells Fargo." Third, the Defendant participated

25 in a settlement conference with Magistrate Judge Hutton three months after the

26

27

28    [3]
    The settlement agreement's choice of law provision names Washington law.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 6

1   agreement purportedly ended the lawsuit.[4] This behavior is inconsistent with a belief

2   that Plaintiffs and Defendant had settled the case. *See* Hearst, 154 Wn.2d at 502

3   (holding that a party's actions after execution of an ambiguous contract are relevant

4   to its interpretation).

5          These facts compel the conclusion that the agreement means what at first seems

6   obvious: The document signed only by Wells Fargo, one defendant in a two-defendant

7   case, releases only Wells Fargo. The Court also finds that the agreement forgives the

8   remaining $216.61 the Plaintiffs owed the bank.

9      **2.  FDCPA Violations**

10         The Plaintiffs alleged two FDCPA violations in addition to the one the Court

11  previously found for not crediting the trustee's payments.

12         ***a.  Contacting the Plaintiffs directly while they were represented by counsel***

13  Debt collectors who contact consumers directly with knowledge they are

14  represented by counsel violate the FDCPA. 15 U.S.C. § 1692c(a)(2). The Defendant

15  addressed the July 30, 2010, demand letter directly to the Plaintiffs; it sent a copy to

16  Mr. Reynolds. Mr. Weinstein characterized the copy as a courtesy, maintaining that

17  the Defendant believed Mr. Reynolds' representation ended upon the termination of

18  the bankruptcy. The Court does not credit the testimony that the Defendant would

19  copy an attorney on a debt-collection letter even if it believed that the attorney no

20  longer represented the consumer. The Court finds that the Defendant had actual

21  knowledge of Mr. Reynold's representation in 2010. Its conduct violated the FDCPA.

22         Moreover, constructive knowledge can establish a violation. *See* Goins v. JBC

23  Assoc., P.C., 352 F. Supp. 2d 262, 273 (D. Conn. 2005) (finding that a lawsuit filed

24  three years earlier by consumer against debt collector was sufficient notice of

25  

26         [4]
     At the trial, counsel characterized the Defendant as an unwilling attendee whose

27  presence was ordered by the Court. But the record indicates that the Defendant

28  *requested* a referral to the magistrate judge after execution of the settlement
    agreement. (ECF No. 32).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 7

1    representation). Here, Mr. Reynolds represented the Plaintiffs in their bankruptcy

2    proceedings from 2006 until 2008, filed and settled the motion for contempt, and sent

3    the Defendant letters in 2007 and 2008 inquiring about the Plaintiffs' account. From

4    these facts the Court finds that the Defendant should have known the Plaintiffs were

5    represented with respect to this debt, irrespective of their actual knowledge.

6             ***b. Misrepresenting the account balance by not crediting the $1,000
             settlement***

7             Communications that misrepresent "the character, amount, or legal status" of

8    a debt violate the FDCPA. 15 U.S.C. § 1692e(2)(A). In addition to not crediting the

9    Plaintiffs for payments made by the trustee, the $2,000 demand letter did not reflect

10   the $1,000 credit negotiated to settle the motion for contempt in the bankruptcy court.

11   As discussed above, the Plaintiffs became entitled to this credit when they stopped

12   pursuing their motion. The Defendant's failure to properly account for the trustee

13   payments and the credit in the demand letter violates the FDCPA.

14           **3.  Bona Fide Error Defense**

15           Notwithstanding these three prima facie violations, the FDCPA provides the

16   Defendant a narrow exception to liability. Clark v. Capital Credit & Collec. Servs.,

17   Inc., 460 F.3d 1162, 1176-77 (9th Cir. 2006). Dubbed the "bona fide error defense,"

18   this affirmative defense applies only if the debt collector:

19           shows by a preponderance of evidence that the violation was not intentional and
             resulted from a bona fide error notwithstanding the maintenance of procedures
20           reasonably adapted to avoid any such error.

21   15 U.S.C. § 1692k(c). The Defendant must prove that (1) it violated the FDCPA

22   unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained

23   procedures reasonably adapted to avoid the violation. McCullough v. Johnson,

24   Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011). The first prong is

25   subjective, the remaining two are objective, and the Defendant has the burden of proof

26   on all three. Johnson v. Riddle, 443 F.3d 723, 728-29 (10th Cir. 2006).

27           Because the Defendant committed three FDCPA violations, it must separately

28   prove each was the result of a bona fide error. It cannot do so. As the name of the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 8

1   defense suggests the error must be bona fide, that is, one made in good faith. <u>Kort v.</u>

2   <u>Diversified Collection Serv., Inc.</u>, 394 F.3d 530, 538 (7th Cir. 2005). An individual

3   who acts opposite his own actual or constructive knowledge does not do so in good

4   faith. This basic tenet is interwoven into nearly every area of the law, and the Court

5   finds it equally applicable to the bona fide error defense. *Cf.* <u>In re Eastman</u>, 419 B.R.

6   711, 730 (W.D. Tex. 2009) (applying principle to FDCPA).

7         The Defendant had knowledge about each of the three violations. It knew or had

8   reason to know that the bankruptcy trustee would make direct payments to Wells

9   Fargo; it was directly involved in negotiating the nondischargability order that

10  provided as much. The Defendant's own case notes also reveal it received a letter

11  from Mr. Reynolds "stating that this [debt] is going to be paid by the trustee." (Exh.

12  F, at 4). As to the missing credit, the Plaintiffs credibly testified that they wrote to the

13  Defendant several times asking why their balance did not reflect either the trustee's

14  payments or the $1,000 credit. Mr. Reynolds sent another letter in 2008, reinforcing

15  that the statements failed to apply the credit. And, as previously discussed, the

16  Defendant demonstrated actual knowledge of Mr. Reynold's representation by

17  copying him on the demand letter. These reasons are enough to reject the bona fide

18  error defense on all three violations.

19        But to invoke the defense, the Defendant must also show that it maintains a

20  procedure reasonably adapted to avoid each error. This circuit employs a two-step

21  analysis. <u>Reichert v. Nat'l Credit Sys., Inc.</u>, 531 F.3d 1002, 1006 (9th Cir. 2008). First,

22  the debt collector must actually employ procedures to avoid errors. Reasonable

23  policies that the Defendant normally uses, but for whatever reason overlooked in this

24  case, do not support the defense. Second, the procedures used must be "'reasonably

25  adapted' to 'avoid the *specific error at issue*.'" <u>Id</u>. (emphasis added). The Defendant

26  presented no evidence of a procedure to prevent direct consumer contact, nor did it

27  explain why the $1,000 settlement was not properly credited or the procedures that

28  ordinarily would do so. The Defendant fails to carry its burden on those two

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 9

1  violations.

2      As to the remaining violation, Mr. Weinstein testified about "Blossom," the

3  Defendant's internal case management program. He explained that the automated

4  system culls information from a number of sources, including the federal courts'

5  PACER database, scanned postal mail, and—important here—creditors' "direct pay

6  files." The direct pay file is an electronic document maintained by Wells Fargo that

7  is supposed to account for any payments the bank receives from consumers. There is

8  no evidence that the Defendant contacted Wells Fargo to ask if the trustee was making

9  payments. This single "procedure," deferring to Wells Fargo's files, is not reasonable.

10 McCullough, 637 F.3d at 948 ("Unwarranted reliance on a client is not procedure to

11 avoid error."). Here, the Defendant had several reasons to know that the bankruptcy

12 trustee was making payments directly to the bank. A reasonable procedure would

13 involve cross-referencing this information with the incoming direct pay files and

14 flagging any inconsistencies. The Defendant "is not entitled under the FDCPA to sit

15 back and wait until [Wells Fargo] makes a mistake" and shield itself with the bona

16 fide error defense. Reichert, 531 F.3d at 1007 (concluding a debt collector did not

17 qualify for the defense because, in part, its procedure wholly depended on the

18 creditor's past provision of accurate information). This is another reason to reject the

19 defense.

20 **C.  Damages**

21     Debt collectors who violate the FDCPA are liable for actual damages, statutory

22 damages of up to $1,000, and reasonable attorney's fees. 15 U.S.C. § 1692k(a).

23 Although the statute does not define "actual damages," courts analogize to

24 compensatory damages and find the term includes out of pocket expenses and

25 emotional harm. Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th

26 Cir. 1995) (holding that "actual damages" includes emotional distress for FCRA

27 violations); *see also* Riley v. Giguiere, 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009)

28 (noting similarities in language and purpose between FDCPA and FCRA statutes).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 10

1   The Court dismissed the Plaintiffs' claim for the amount erroneously demanded but
2   never paid. So the remedies remaining are emotional harm, statutory damages, and
3   attorney's fees.

4       **1. Emotional Harm**

5       The parties argue about the proper elements of an emotional damages award
6   under the FDCPA. Indeed, there is no circuit precedent and a split of district court
7   authority on the issue. Some require plaintiffs to prove the equivalent of a state law
8   outrage tort (which requires "severe emotional distress"), while others impose a lesser
9   burden of establishing "significant harm." *Compare* Riley, 631 F. Supp. 2d at 1315
10  (finding that the FDCPA creates a federal standard), *with* Costa v. Nat'l Action Fin.
11  Serv., 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007) (finding state tort elements the
12  lodestar). The Court need not select among these competing interpretations, because
13  it finds that the Plaintiffs did not prove "significant harm" under the more lenient
14  standard.

15      Significant harm, while less than severe, must still be more than "[f]leeting or
16  trivial anxiety or distress." Dawson v. Wash. Mut. Bank, 390 F.3d 1139, 1149 (9th
17  Cir. 2004). Mr. Strasters testified that he would become angry when the Defendant
18  would contact him, that he withdrew from social functions, and that he lost sleep
19  during the pendency of his dealings with it. Ms. Strasters testified that she was not
20  affected by the Defendant's actions, and professed concern only for her husband.
21  Though the Court does not marginalize the Plaintiffs' experiences, neither has endured
22  "significant harm" under the law.

23      Moreover, the Plaintiffs are also required to show a nexus between the
24  Defendant's actions and their emotional harm. Id. at 1149-50. Causation is important
25  in all cases, but it can become muddled in FDCPA actions because debt-laden
26  consumers are already in stressful situations and subject to collection from a variety
27  of creditors. The Plaintiffs have not shown an adequate nexus here. Ms. Strasters
28  testified that her husband reduced his social contacts after a health scare in 2001, and

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 11

became even more withdrawn when the couple moved to Colorado in 2008. These external events could be as much a part of Mr. Strasters's anxiety as the Defendant's actions. The Court declines to award damages for emotional distress.

### 2. Statutory Damages

Statutory damages are available regardless of whether the Plaintiffs suffer any actual harm. Baker v. G.C. Services Corp., 677 F.2d 775, 780 (9th Cir. 1982). A FDCPA violation establishes the Plaintiffs' eligibility for statutory damages; in ultimately setting the amount, the Court weighs: (1) the frequency and persistence of non-compliance; (2) the nature of such non-compliance; and (3) the extent to which the non-compliance was intentional. 15 U.S.C. § 1692k(b)(1). Considering these factors, the Court awards the Plaintiffs $1,000 in statutory damages, the maximum permitted. Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007) (finding that statutory damages are measured per lawsuit, not per violation). The Defendant, despite repeated attempts by the Plaintiffs to correct the problem, erroneously demanded money from them for nearly two years. Although the Plaintiffs' lawsuit is based on a single letter, that communication constitutes three separate FDCPA violations. Clark, 460 F.3d at 1178 (holding that "the fact that numerous violations of the FDCPA are predicated upon one set of circumstances should be considered and that it is best considered during the calculation of damages"). The amount of this award is particularly appropriate given that $1,000 is also the amount of the credit improperly withheld by the Defendant.

### 3. Attorney's Fees

The Court must award attorney's fees and costs to a prevailing plaintiff but retains discretion to fix the amount. 15 U.S.C. § 1692k(a)(3); Sanders v. Jackson, 209 F.3d 998, 1003 (7th Cir. 2000) (holding a fee award mandatory under the FDCPA). The Plaintiffs shall submit a cost bill and request for an award of attorney's fees. The Defendant may respond, and the Court will determine whether a hearing is necessary.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 12

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.  The District Court Executive shall enter **JUDGMENT FOR THE**

3  **PLAINTIFFS** for $1,000 and reasonable attorney's fees and costs, in accordance with

4  this Order and FED. R. CIV. P. 58.

5    2.  The Defendant is **ENJOINED** from contacting the Plaintiffs about the

6  underlying debt at issue in this case.

7    3.  The Plaintiffs shall submit a cost bill and request for fees on or before

8  February 17, 2012. The Defendant shall respond on or before March 2, 2012.

9    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

10  Order and forward copies to counsel.

11    **DATED** this 8th day of February, 2012.

12

13

14                    *s/Robert H. Whaley*
                      ROBERT H. WHALEY
15                    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28  judgment.ord.wpd

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 13